PRIEST (GILBERT v.). See Case No. 5,-413.

## Case No. 11,419.
### The PRIDE OF THE OCEAN.
[10 Ben. 610.] [1]

District Court, E. D. New York. Oct., 1879.

COLLISION AT SEA—CROSSING COURSES—PRACTICE —SUPPRESSING DEPOSITIONS.

1. Where a collision occurred about 65 miles from Sandy Hook, on a clear moonlight night, between a ship loaded with petroleum and sailing S. E. ½ S. within 2 points of close-hauled, on the starboard tack and going 6 or 7 knots, and a schooner loaded with coal and sailing N. E. nearly before the wind with booms all off to starboard and going 4 or 4½ knots, each vessel seeing the other at a distance of two miles and each at the time of collision endeavoring to avoid the other, the schooner by going to westward under a starboard helm and the ship by going westward under a port helm: Held, that the change of course of the ship was made deliberately, not to avoid a collision but to go astern of the schooner, and that she was in fault for the collision, not having held her course as she was bound to do.

2. On a motion to suppress depositions of witnesses for claimant because taken before answer: Held, that no rule of practice requires answer to be filed before taking depositions; and no prejudice to the libellant in this case appearing, the motion must be denied.

3. Semble, that where answer is delayed for a purpose, and prejudice to the libellant's case appears, such a motion might prevail, in the absence of any rule.

In admiralty.

W. W. Goodrich and R. D. Benedict, for libellants.

H. T. Wing and W. R. Beebe, for claimants.

BENEDICT, District Judge. The vessel proceeded against in this action is in custody, and has been for some reason long detained without making application to be discharged on giving stipulation. I shall not therefore delay my determination of the case in order to specify in detail the portions of the evidence that have led to the conclusions I am about to announce. In regard to many of the facts of the case, there is no dispute. The action is brought to recover for the sinking of the three-masted schooner George W. Andrews in a collision between that vessel and the ship Pride of the Ocean, that occurred about 65 miles from Sandy Hook, on a clear moonlight night, when vessels could be seen at a distance of two or three miles. The schooner, heavily laden with coal, was on a course N. E. nearly before the wind, with booms all off to starboard and going some 4 or 4½ knots.

The ship was sailing S. E. ½ E. within two points of, close hauled on the starboard tack, going some 6 or 7 knots. Each vessel was seen by the other at a distance of some two miles. They came together nearly at right

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

angles, the ship striking the schooner on the schooner's starboard bow forward and causing her to sink almost immediately. At the time she was struck the schooner was heading to westward, as all the witnesses agree, and the way in which the vessels came together shows that the ship was then heading south, or, as some of her crew say, further to west than that.

At the time of the collision each vessel was endeavoring to avoid the other, the schooner by going to the westward under a starboard helm, the ship by going to westward under a port helm. As the vessels were sailing when they approached each other, it was the duty of the schooner to avoid the ship, and the duty of the ship to hold her course. The ship did not hold her course, but ported her helm. If when the ship ported her helm she was in extremis, by reason of the dangerous approach of the schooner without change, she is free from fault; otherwise she is liable for not having kept her course as required by law.

The claim made on the trial in behalf of the ship is that the only change made in her course was just as the vessels came together, at which time the captain rushed on deck, and helped to heave the wheel hard down, having been roused by an order to that effect from the second officer in charge of the deck, and when the schooner was crossing the ship's bows from port to starboard just ahead of her.

This view cannot be upheld.

The account given in the answer is different. The answer states that the ship's helm was ported when the schooner was moving from starboard to port. The testimony of the man at the ship's helm agrees with the answer, and shows that the course of the ship had been altered for the purpose of aiding the schooner in effecting a manœuvre which it was supposed on board the ship the schooner was about to attempt, namely, to cross the ship's bows instead of going under her stern.

That the ship's helm was ported and her course altered while the schooner was not dangerously near the ship, is plainly proved. Indeed, the man at the ship's helm says that he supposed the vessels were going clear at the time he ported, and the answer asserts that the helm was ported "for greater security in the premises." It further appears that this alteration of the ship's course was before the time of which the master speaks when he says he was awakened by the second mate's order to put the wheel hard down and then jumped on deck to the wheel and helped the man to get the wheel down, the wheel being three-fourths down when he reached it; for the man at the wheel omits all allusion to the captain's presence at the wheel when the wheel was first ported and the ship brought up to the wind until her sails shook. These and other circumstances, which a critical examination of the evidence discloses, have led me to conclude that the cause of the collision was an alteration of the ship's course made, not in alarm but deliberately, and for the purpose, not of avoiding a collision then imminent, but in order to go astern of the schooner.

Such an alteration on the part of a vessel bound by law to hold her course must be held to be a fault.

Before dismissing the case from consideration, I must notice a point raised by a motion made to suppress the depositions of the ship's crew. These depositions were taken in behalf of the claimant under the act of congress on due notice but before answer filed. Objection was made to the taking of the depositions before filing an answer, but no answer was filed until the depositions had been taken and filed, and the libellant thereupon, in due time, moved to suppress the depositions for this reason. It is conceded that there is no rule of practice that requires an answer to be filed before depositions are taken on behalf of the claimant, but the necessity of the adoption of such a rule is insisted on. While the case might arise in which prejudice to the libellants would result from being compelled to cross-examine the claimant's witnesses without knowing the ground of defence, no such prejudice has arisen in this case and there is no ground to suppose that any advantage over the claimant was sought to be gained by the delay in filing the answer. There is therefore no foundation for the motion to suppress in this case. In a proper case where the filing of the answer is delayed for a purpose, and the libellant is prejudiced in his case by the withholding of the ground of defence, it may well be that such a motion would be allowed to prevail.

Let a decree be entered in favor of the libellants, with an order of reference to ascertain the amount.